**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KENNETH GERALD DAVIS,

                Petitioner,

v.                                    Case No. 2:07-CV-10129

MARY BERGHUIS,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

**I.  INTRODUCTION**

      Petitioner Kenneth Gerald Davis, a state prisoner currently confined at the

Brooks Correctional Facility in Muskegon Heights, Michigan, has filed a *pro se* petition

for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner was convicted of one

count of possession with intent to deliver 225-650 grams of cocaine in violation of Mich.

Comp. Laws § 333.7401(2)(a)(ii), one count of possession of less than 25 grams of

cocaine in violation of Mich. Comp. Laws § 333.7403(2)(a)(v), and two counts of felony

firearm in violation of Mich. Comp. Laws § 750.227b following a jury trial in the Oakland

County Circuit Court in 2004.  Petitioner also pleaded guilty to a charge of felon in

possession of a firearm in violation of Mich. Comp. Laws § 750.224f.  Petitioner was

sentenced as a third habitual offender to 20 to 60 years imprisonment on the

possession with intent to deliver 225-650 grams of cocaine conviction, a consecutive

term of one to eight years imprisonment on the possession of less than 25 grams of

cocaine conviction, a consecutive term of one to 10 years imprisonment on the felon in

possession of a firearm conviction, and concurrent terms of two years imprisonment on the felony firearm convictions, to be served consecutively to the other sentences.

In his pleadings, Petitioner raises claims concerning double jeopardy, the effectiveness of trial counsel, prosecutorial misconduct, and the constitutionality of his sentence. For the reasons stated below, the court denies with prejudice the petition for a writ of habeas corpus.

## II. BACKGROUND

Petitioner's convictions arise from an incident which occurred in Pontiac, Michigan on October 15, 2002. Petitioner was charged with one count of possession with intent to deliver 225-650 grams of cocaine, possession with intent to deliver less than 50 grams of cocaine, possession of a firearm by a felon, and two counts of felony firearm. His case proceeded to trial in Oakland County Circuit Court.

At trial, Pontiac Police Officer Scott McDonald testified that on October 15, 2002 he was conducting surveillance at 1221 Colony Square Apartments in Pontiac, Michigan. The surveillance was in response to information received from a confidential informant that a stocky, light-skinned, black man with long braids by the name of Kenneth Davis was selling cocaine out of apartment #225. Officer McDonald observed Petitioner exit the apartment building carrying a large white garbage bag and place the garbage bag into a dumpster. The bag was half full and twisted shut. Officer McDonald notified fellow officers of his observations and continued his surveillance. About 20 minutes later, Officer McDonald observed Petitioner working under the hood of a gray or silver Chevrolet Monte Carlo and saw the other officers approach him.

2

Pontiac Police Sergeant Michael Story testified he was also conducting surveillance at 1221 Colony Square Apartments. Upon receiving information from Officer McDonald that Petitioner had thrown the white garbage bag into the dumpster, Sergeant Story searched the dumpster and found only one bag matching the description given by Officer McDonald. Sergeant Story searched the bag and found a cigar box containing several corner knots of a sandwich bag containing a white powdery residue. Sergeant Story believed the residue to be cocaine. He conducted a field test on the residue, and the results were positive for cocaine. Sergeant Story then observed Petitioner near the Monte Carlo and ordered Pontiac Police Officer William Olsen and other officers to approach Petitioner.

Officer Olsen testified that he approached Petitioner while he was at the Monte Carlo and identified himself as a police officer. Officer Olsen observed a large lump near Petitioner's lower left leg cuff and began a pat-down search of Petitioner. During the search, Officer Olsen asked Petitioner about the lump and Petitioner admitted it was drugs. Petitioner also admitted that had a handgun. Officer Olsen arrested Petitioner and confiscated one large bag containing seven smaller bags of suspected cocaine, a handgun, and a dry cleaning receipt with Petitioner's name printed on it. Subsequent testing by the Michigan State Police Crime Lab confirmed that all seven packages contained cocaine and that the total weight was 420.5 grams. The handgun was a .22 caliber with one live round in the chamber. Police also found a set of keys on Petitioner, one of which fit the door to apartment #225.

Based on the information from the confidential informant and the officers' own surveillance, the police obtained a search warrant for apartment #225. Upon execution

of the search warrant, the officers discovered lease documents for apartment #225 containing Petitioner's name, mail addressed to Petitioner at apartment #225, and a picture of Petitioner in the master bedroom. A digital scale and plastic baggies were recovered from the kitchen counter. Officer McDonald testified that he searched the master bedroom of the apartment which contained men's clothing and shoes. During that search, he found a shoebox in the closet which contained nine, individually packaged rocks of cocaine and $1,445 in paper currency. Pontiac Police Officer Lasseigne testified that he confiscated a 12-gauge shotgun and a 9mm rifle from under the bed. Officer Lasseigne also found ammunition for a .22 caliber handgun, a 12-gauge shotgun, and a 9mm rifle in a bedroom drawer. The officers testified that the amount of narcotics found, its packaging, and the digital scale all indicated the cocaine was intended for distribution.

At the close of trial, the jury found Petitioner guilty of one count of possession with intent to deliver 225-650 grams of cocaine, one count of possession of less than 25 grams of cocaine, and two counts of felony firearm. Petitioner pleaded guilty to being a felon in possession of a firearm. The trial court sentenced him as a third habitual offender to 20 to 60 years imprisonment on the possession with intent to deliver 225-650 grams of cocaine conviction, a consecutive term of one to eight years imprisonment on the possession of less than 25 grams of cocaine conviction, a consecutive term of one to 10 years imprisonment on the felon in possession conviction, and concurrent terms of two years imprisonment on the felony firearm convictions, to be served consecutively to the other sentences.

Following his convictions, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising several claims of error, including those contained in the present petition. The Michigan Court of Appeals affirmed his convictions and sentence. *See People v. Davis*, No. 255238, 2005 WL 1459537 (Mich. Ct. App. June 21, 2005) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Davis*, 474 Mich. 957, 706 N.W.2d 741 (2005).

Petitioner thereafter filed his federal habeas petition with this court, raising the following claims:

I.     Double Jeopardy bars the second felony firearm and the possession of less than 25 grams of cocaine convictions.

II.    He was unlawfully denied his constitutional right to the effective assistance of counsel when counsel failed to move to dismiss on speedy trial or violation of the 180-day rule grounds, when he failed to appear repeatedly on his motion to quash the information, when he failed to move to have the search warrant and the fruits of it suppressed, when he failed to move tho suppress the fruits of the pat-down search, and when he did not move to have Petitioner sentenced under the newly-enacted amendments to the drug law.

III.   He was unlawfully deprived of due process of law at his trial when the prosecutor committed misconduct during closing argument that warrants reversal and a new trial.

IV.   The state court violated the United States and Michigan Constitutions in sentencing.

Respondent has filed an answer to the petition asserting that it should be denied.

### III. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner

filed his habeas petition after the ADEPA's effective date.  *See Lindh v. Murphy*, 521

U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he

'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant

the writ if the state court identifies the correct governing legal principle from [the

Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see*

*also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's

application of [Supreme Court] precedent 'unreasonable,' the state court's decision

must have been more than incorrect or erroneous.  The state court's application must

6

have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases - indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F.Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. §2254(e)(1). A habeas petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.  DISCUSSION

### A.  Double Jeopardy Claims

Petitioner first asserts that he is entitled to habeas relief because his conviction for possession of less than 25 grams of cocaine and the second felony firearm conviction violate his state and federal constitutional rights against double jeopardy.

Specifically, Petitioner asserts that his two cocaine convictions were one event for which he may not receive multiple punishments.  Petitioner relatedly asserts that his second felony firearm conviction violates double jeopardy because it was based upon alleged invalid possession of less than 25 grams of cocaine conviction.  Respondent contends that this claim lacks merit.

As an initial matter, the court notes that Petitioner is not entitled to federal habeas relief on any claim that his convictions violate the Double Jeopardy Clause of the Michigan Constitution.  In reviewing a habeas corpus petition, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 2254(a).  "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  The court will therefore proceed to the federal issue.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Double Jeopardy Clause provides three basic protections:  "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  The final protection is at issue in this case.  The United States Supreme Court set forth the test for determining whether two crimes constitute the same offense for double jeopardy purposes in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000).  The test "inquires

whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696; *Blockburger*, 284 U.S. at 304.

The Michigan Court of Appeals reviewed this claim for plain error and denied relief, stating in relevant part:

> [A] double jeopardy violation does not occur "if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other." *People v. Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995); *see also People v. Wynn*, 197 Mich App 509, 510; 496 NW2d 799 (1992). In *People v. Bartlett*, 197 Mich App 15, 17-18; 494 NW2d 776 (1992), this Court held that double jeopardy did not bar two convictions under § 7401 if the facts showed that two different deliveries occurred at different times and were separately negotiated and paid.
>
> Here, defendant's two possession convictions involved separate and distinct offenses. The jury convicted defendant under § 7401(2)(a)(ii) for his possession of 420.5 grams of cocaine. The evidence established that, when the police seized the cocaine from defendant, he was not in his apartment, but sitting in the driver's seat of a car. The police found the cocaine, along with a loaded handgun, concealed under defendant's pant leg. Further evidence showed that the cocaine, which was separated into seven individual packets, was packaged in a manner that suggested delivery. In contrast, the jury convicted defendant under § 7403(2)(a)(v) based on evidence of his constructive possession of a smaller quantity of cocaine in his apartment. The police found the cocaine inside a shoe in defendant's bedroom and they also found two firearms and a digital scale in the apartment. Accordingly, the cocaine from defendant's apartment was in a different location, and apparently had a different intended purpose.
>
> In sum, the evidence showed that defendant possessed two separate quantities of cocaine, in separate locations, in different contexts, and for different purposes. Therefore, double jeopardy protections did not preclude separate convictions....

*Davis* 2005 WL 1459537 at *1.

The United States Supreme Court has yet to articulate a test for determining when two distinct acts occur, but some circuit courts have discussed this issue. In *Rashad v. Burt*, 108 F.3d 677 (6th Cir. 1997), the defendant was convicted of two separate counts of possession with intent to deliver cocaine. The first quantity of cocaine was recovered during the execution of a search warrant at the defendant's home. *Id.* at 678. During the execution of the warrant, a drug-detecting dog alerted to the interior of the defendant's vehicle and the car was impounded for forfeiture proceedings and remained in police custody. *Id.* A week later, police received a tip that there was cocaine hidden in the vehicle. *Id.* The police obtained a search warrant for the vehicle and found a second stash of cocaine, along with other narcotics and a handgun. *Id.* at 678-79. The defendant was convicted of two counts of possession with intent to deliver cocaine. *Id.* at 679.

The United States Court of Appeals for the Sixth Circuit affirmed the district court's grant of habeas relief and held a double jeopardy violation occurred because the two quantities of cocaine were possessed at the same time and should have been combined into one charge. *Id.* at 680-81. In reaching this decision, the Sixth Circuit did not apply the traditional *Blockburger* test, finding that test "insufficient where, as here, the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction." *Id.* at 679. Rather, the court looked to the "same evidence" test which holds that "successive prosecutions based on the same 'fact situation' are barred by double jeopardy if the separate charges could have been joined and no significant additional fact was required in the second prosecution." *Id.* at 680 (citing *Jordan v. Commonwealth of Virginia*, 653

F.2d 870, 874 (4th Cir. 1980)).  In applying the "same evidence" test, the court found

that the defendant possessed both quantities of cocaine at the same time and place,

that the recovery of the cocaine resulted from the same interaction with the police, and

that the evidence suggested a unifying goal of distribution.  *Id.* at 680-81.  In conclusion,

the court stated that "[a]bsent evidence of separate and distinct dedications of the two

caches, his possession was a single, undivided offense."  *Id.* at 681.

The Sixth Circuit's decision in *Rashad*, however, is not controlling.  First, *Rashad*

is distinguishable on its facts.  The record in this case reveals that Petitioner possessed

two separate quantities of cocaine – one on his person, which was recovered by the

police outside of the apartment and a second, much smaller quantity, which was

discovered in Petitioner's bedroom closet upon a later search of his apartment.  The two

stashes of cocaine were found at different times, kept in different locations, and were

intended for different purposes.  Although Petitioner was originally charged with

possession with intent to deliver both quantities of cocaine, the jury only convicted

Petitioner of possession with intent to deliver the larger quantity of cocaine found on his

person and found that he did not intend to deliver the smaller amount of cocaine found

in his apartment.  Clearly, the jury was able to differentiate the intended purposes for

the two stashes of cocaine, a factor that the Sixth Circuit found lacking in *Rashad*.

Second, and significantly, *Rashad* does not constitute clearly established federal

law – and its holding has been limited to its specific facts.  *See United States v. Forman*,

180 F.3d 766, 770 (6th Cir. 1999) (*Rashad* "is to be limited in its application to

circumstances such as were presented in that case."); *see also Murr*, 200 F.3d at 901

(noting the limited holding of *Rashad* and distinguishing the facts).  To be sure, the

United States Supreme Court has rejected the use of a same transaction or same evidence test. *See Dixon*, 509 U.S. at 705; *see also United States v. Felix*, 503 U.S. 378, 386 (1992) ("[O]ur precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation."); *Garrett v. United States*, 471 U.S. 773, 790 (1985) (noting that the Supreme Court has "steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause").

Third, other federal circuits have found that double jeopardy principles are not violated by convictions arising from distinct drug stashes. In *United States v. Johnson*, 977 F.2d 1360 (10th Cir. 1992), for example, the defendant, along with co-conspirators, was charged with possession with intent to distribute amphetamine stemming from drugs seized from a pickup truck with a trailer. *Id.* at 1373. The defendant was also charged individually with possession of amphetamine stemming from a brown vial found in his truck. *Id.* In finding that the two amounts of amphetamine were separate, the Tenth Circuit held that "the proper focus of a 'separate stash' inquiry is not on logistics but on demonstrated intent." *Id.* at 1374. The court concluded that the defendant's convictions for possession with intent to distribute and for possession did not violate double jeopardy. *Id.*; *see also United States v. Maldonado*, 849 F.2d 522, 524 (11th Cir. 1988) (two convictions for possession with intent to distribute drugs did not violate double jeopardy where one stash was found on the defendant and the other was found in a subsequent search of his home); *United States v. Blakeney*, 753 F.2d 152, 154-55 (D.C. Cir. 1985) (two convictions for possession with intent to distribute drugs did not violate double jeopardy where stashes were found in an apartment and at work).

In light of this authority, the court finds that the Michigan Court of Appeals'

decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The record demonstrates that police recovered two separate stashes of cocaine from Petitioner's person and from his bedroom and that the jury was able to discern a distinct intended purpose for each stash. A finding that there were two distinct acts "necessarily precludes a violation of the double jeopardy clause." *Costo v. United States*, 904 F.3d 344, 346 (6th Cir. 1990); *see also Smith v. Mills*, 98 Fed. Appx. 433, 436 (6th Cir. 2004). The state court reasonably determined that Petitioner's conviction for possession of less than 25 grams of cocaine and the second felony firearm conviction do not violate double jeopardy principles. Habeas relief is not warranted on this claim.

### B. Ineffective Assistance of Counsel Claims

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to move to dismiss for a violation of the 180-day rule and his right to a speedy trial, failing to move to quash the information, failing to move to suppress the search warrant, failing to move to suppress the pat-down search of his person, and failing to move for sentencing under amendments to the drug laws. Respondent contends that these claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that the

deficient performance prejudiced the defense.  Counsel's errors must have been so

serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were

"outside the wide range of professionally competent assistance" in order to prove

deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's

performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is

strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On

balance, the benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that

the [proceeding] cannot be relied on as having produced a just result.  *McQueen v.

Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 486).

With this standard in mind, the court will address each of Petitioner's claims.

### 1.  Failure to Move to Dismiss for a 180-Day Rule Violation

Petitioner asserts that counsel was ineffective for failing to move for a dismissal

under Michigan's 180-day rule, Mich. Comp. Laws § 780.131.  The Michigan Court of

Appeals denied relief on this claim, concluding that because Petitioner was subject to

mandatory consecutive sentencing upon conviction, the 180-day rule did not apply.

*Davis*, 2005 WL 1459537 at *2.  This determination is entitled to deference on habeas

review as state courts are the final arbiters of state law.  *See Bradshaw v. Richey*, 546

U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691(1975); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Because there was no violation of the 180-day rule, Petitioner cannot demonstrate that counsel erred or that he was prejudiced by counsel's inaction. Therefore, habeas relief is not warranted on this claim.

### 2. Failure to Move to Dismiss for a Speedy Trial Violation

Petitioner relatedly asserts that counsel was ineffective for failing to move for a dismissal based on his constitutional right to a speedy trial. Petitioner admits that because the delay was less than 18 months, he bears the burden of proving prejudice. *See Barker v. Wingo*, 407 U.S. 514 (1972). The Michigan Court of Appeals denied relief on this claim, finding that "[d]efendant does not specifically allege that he was prejudiced by the delay or that exculpatory evidence was lost because of the wait. Further, because defendant was incarcerated for a prior offense, there was no prejudice to his person." *Davis*, 2005 WL 1459537 at *2.

The decision of the Michigan Court of Appeals is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The four factors to be considered to determine whether a defendant has been deprived of a speedy trial are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. Petitioner has not demonstrated how he was prejudiced by the delay between his arrest and the start of his trial. Consequently, he cannot demonstrate that counsel was deficient or that he was prejudiced by counsel's failure to raise the issue in a motion to dismiss. Habeas relief is not warranted on this claim.

### 3. Failure to Move to Quash the Information

15

Petitioner asserts that counsel was ineffective for failing to move to quash the information following his preliminary examination on the ground that the possession with intent to distribute less than 50 grams of cocaine and the second felony firearm charges violated double jeopardy. The Michigan Court of Appeals concluded that because there was no double jeopardy violation, "counsel's alleged inaction did not deprive defendant of the effective assistance of counsel." *Davis*, 2005 WL 1459537 at *1, n. 4. This decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. There was no violation of Petitioner's right against double jeopardy. *See* Discussion *supra*. Consequently, Petitioner cannot establish that counsel was ineffective under the *Strickland* standard. He is thus not entitled to relief on this claim.

### 4. Failure to Move to Quash the Search Warrant

Petitioner asserts that counsel was ineffective for failing to move to quash the search warrant for his apartment. The Michigan Court of Appeals denied relief on this claim, concluding that because "the magistrate had a substantial basis to conclude that officers had probable cause to believe that controlled substances would be found inside defendant's apartment . . . defendant cannot demonstrate that his trial counsel erred by failing to challenge the warrant affidavit." *Davis*, 2005 WL 1459537 at *3.

"[S]o long as the magistrate has a 'substantial basis for . . . concludin[g]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1980)). This is the precise standard applied by the Michigan Court of Appeals. "Where defense counsel's failure to litigate a Fourth Amendment claim

competently is the principle allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

The Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent not an unreasonable application of federal law or the facts. The record reveals that prior to setting up surveillance at Petitioner's apartment, the affiant, Officer Gary Hembree received information from a reliable confidential information that an individual by Petitioner's name and matching Petitioner's description was selling drugs out of apartment #225. This information was substantiated by the officers' surveillance of Petitioner. Specifically, the officers watched Petitioner discard a garbage bag that contained cocaine and then, upon investigation of Petitioner, discovered a large quantity of cocaine, a handgun, and keys to apartment #225. Officer Hembree also stated that based on his experience as a police officer, he believed Petitioner was selling drugs out of apartment #225. The Court of Appeals reasonably concluded that the magistrate had a substantial basis to issue the warrant such that Petitioner's Fourth Amendment claim lacks merit. Therefore, Petitioner cannot establish that counsel was ineffective under the standard set forth in *Strickland*. Habeas relief is not warranted on this claim.

### 5. Failure to Move to Suppress the Pat-Down Search

Petitioner also asserts that counsel was ineffective for failing to seek suppression of the pat-down search of his person. The Michigan Court of Appeals denied relief on this claim finding that, "[b]ecause the police were authorized to stop defendant and perform a limited patdown search, a motion to suppress the evidence . . . would have

17

been meritless. . . . [C]ounsel is not required to advocate a meritless position." *Davis*,
2005 WL 1459537 at *4.

This decision is neither contrary to United States Supreme Court precedent nor
an unreasonable application of federal law or the facts. It is well-established that police
officers may make an investigatory stop upon "reasonable suspicion" that crime is afoot.
*See Terry v. Ohio*, 392 U.S. 1 (1968). The officer "must be able to point to specific and
articulable facts which, taken together with reasonable inferences from those facts,
reasonably warrant" the stop. *Id.* at 21. Furthermore, an officer may make a
reasonable search for weapons for officer safety where "he has reason to believe that
he is dealing with an armed and dangerous individual." *Id.* at 27.

In this case, the record reveals that the police officers had a reasonable
suspicion of criminal activity following the recovery of cocaine from the garbage bag
thrown away by Petitioner. The state court reasonably concluded that the investigation
of Petitioner for illegal narcotics activity, as well as the lump observed on Petitioner's
lower left leg, gave the officers reason to believe that Petitioner was armed. Petitioner's
Fourth Amendment claim regarding the pat-down search thus lacks merit and he cannot
establish that counsel was ineffective. Habeas relief is not warranted.

### 6. Failure to Request Application of Sentencing Amendments

Petitioner asserts that counsel was ineffective for failing to request the
application of the sentencing amendments to Mich. Comp. Laws § 333.7401(3) at his
sentencing hearing. The Michigan Court of Appeals denied relief on this claim, ruling
that Mich. Comp. Laws § 333.7401 "applies only to crimes committed on or after March
1, 2003." *Davis*, 2005 WL 1459537 at *4, n.9. This determination is entitled to

deference on habeas review as state courts are the final arbiters of state law.  *See*

*Bradshaw*, 546 U.S. at 76; *Mullaney*, 421 U.S. at 691; *Sanford*, 288 F.3d at 860.

Because Mich. Comp. Laws § 333.7401 does not apply to him, Petitioner cannot

establish that counsel was ineffective in this regard.  Habeas relief is not warranted.

### C.  Prosecutorial Misconduct Claims

Petitioner also asserts that he is entitled to habeas relief because the prosecutor

engaged in misconduct during closing arguments by making a civic duty argument and

by vouching for the credibility of police witnesses.  Respondent contends that these

claims lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from

improper methods calculated to produce a wrongful conviction."  *Berger v. United*

*States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a

habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial

with unfairness as to make the resulting conviction a denial of due process."  *Donnelly*

*v. DeChristoforo*, 416 U.S. 637 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part

test for determining whether prosecutorial misconduct violates a defendant's due

process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing

cases).  First, the court must determine whether the challenged statements were indeed

improper.  *Id.* at 452.  Upon a finding of impropriety, the court must decide whether the

statements were flagrant.  *Id.*  Flagrancy is determined by an examination of four

factors: 1) whether the statements tended to mislead the jury or prejudice the accused;

2) whether the statements were isolated or among a series of improper statements; 3)

19

whether the statements were deliberately or accidentally before a jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Milton*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 540-550 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

### 1. Appeal to Civic Duty

Petitioner asserts that the prosecutor made an improper civic duty appeal by telling the jury that the prosecution represented the citizens of Michigan and was advocating for their rights. Petitioner argues that this statement was improper because the jury would infer that the prosecutor represented them and, therefore, that it was in the jury's best interest, individually and as citizens, to convict him.

A prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). The Michigan Court of Appeals denied relief on this claim, stating that "[d]efendant fails to cite any support for his claim that it is prejudicial for a prosecutor to simply note that he represents the state of Michigan . . .." *Davis*, 2005 WL 1459537 at *4. The Michigan Court of Appeals further found that, even if the prosecutor's remarks were improper, they did not prejudice Petitioner and the trial court cured any prejudice through jury instruction. *Davis*, 2005 WL 1459537 at *4, n. 11.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Court of

Appeals was reasonable in finding that even if the prosecutor's comments were improper, they did not prejudice Petitioner nor render his trial fundamentally unfair. Therefore, habeas relief is not warranted on this claim.

### 2.  Vouching for Witnesses

Petitioner next asserts that the prosecutor improperly vouched for the credibility of police witnesses by stating that the judge determines whether evidence is properly seized.  Petitioner argues that because the evidence had been admitted by the judge, the prosecutor's remarks had the effect of placing the court's approval on the officers' actions, thereby bolstering the credibility of the officers' testimony.

It is well-settled that it is improper for a prosecutor to express his or her own personal beliefs and opinions concerning the credibility of a witness.  *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002).  Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own.  *See United States v. White*, 58 Fed. Appx. 610, 617-18 (6th Cir. 2003) (citing cases).

The Michigan Court of Appeals found that the prosecutor did not convey any special knowledge regarding the truthfulness of the officers, that the prosecutor was responding to defense counsel's argument that the officers acted illegally in seizing the cocaine, and that the prosecutor reminded the jury that it was their duty to decide the

facts and evaluate the evidence. *Davis*, 2005 WL 1459537 at *4. The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. "[I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." *Young*, 470 U.S. at 12-13. The record supports the state court's determination that the prosecutor's statement was a proper response to defense counsel's remarks that the drugs were illegally seized. Habeas relief is not warranted on this claim.

### D. Sentencing Claims

Lastly, Petitioner asserts that he was sentenced in violation of the Michigan and United States Constitutions. Petitioner did not brief this portion of his petition. Because the court construes *pro se* pleadings broadly, however, the court will assume that Petitioner raises the same issues in his habeas petition that he presented to the state courts on direct appeal. Accordingly, Petitioner claims that his sentence is disproportionate, relies upon facts not found by the jury, and constitutes cruel and unusual punishment. Respondent contends that these claims lack merit.

### 1. Disproportionate Sentence

Petitioner asserts that the minimum sentence of 20 years imprisonment on his conviction for possession with intent to deliver 225-650 grams of cocaine is disproportionate. The Michigan Court of Appeals denied relief, finding that the 20-year minimum sentence was legislatively mandated and enjoyed a presumption of proportionality. *Davis*, 2005 WL 1459537 at *5. Petitioner's assertion that his sentence is disproportionate under state law fails to state a claim for federal habeas relief. *See*

22

*Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 27, 41 (1984)); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).  State courts are the final arbiters of state law.  *See Bradshaw*, 546 U.S. at 76; *Mullaney*, 421 U.S. at 691; *Sanford*, 288 F.3d at 860.  Moreover, there is also no federal constitutional right to individualized sentencing.  *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner is thus not entitled to relief on this claim.

## 2. Findings of Fact Not Determined by a Jury

Petitioner asserts that the sentencing court, instead of the jury, made findings of fact at his sentencing in violation of his Sixth and Fourteenth Amendment rights.  In support of this argument, Petitioner cites *Blakely v. Washington*, 542 U.S. 296 (2004).  The Michigan Court of Appeals held that *Blakely* did not apply to Michigan's indeterminate sentencing scheme.  *Davis*, 2005 WL 1459537 at *5 (citing *People v. Claypool*, 470 Mich. 715, 730 n. 14, 684 N.W.2d 278 (2004)).

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The *Blakely* line of cases does not apply to Michigan's indeterminate sentencing scheme.  In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge; the judge's only discretion is in setting the minimum sentence.  The federal courts within this Circuit have examined Michigan's indeterminate sentencing scheme and have found no possible Sixth Amendment violation.  *See Tironi v. Birkett*, 252 Fed. Appx. 224, 225 (6th Cir. 2007); *Delavern v. Harry*, No. 07-CV-13293, 2007 WL 2652603, *3-4 (E.D. Mich. Sept. 7, 2007); *Connor v. Romanowski*, No. 05-74074, 2007 WL 1345066

(E.D. Mich. May 4, 2007); *McNall v. McKee*, No. 1:06-CV-760, 2006 WL 3456677, *2 (W.D. Mich. Nov.30, 2006); *accord People v. Drohan*, 475 Mich. 140, 160-62, 715 N.W.2d 778 (2006).[1]  Habeas relief is not warranted on this claim.

### 3.  Cruel and Unusual Punishment

Lastly, Petitioner asserts that his sentence constitutes cruel and unusual punishment and is proscribed by the Eighth Amendment.  The Michigan Court of Appeals rejected this argument as being precluded by prior Michigan law.  *Davis*, 2005 WL 1459537 at *5, n. 16.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks* , 209 F.3d 577, 583 (6th Cir. 2000)**.**  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583.  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin*, 213 F.3d at 302.  "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without the possibility of parole."  *Thomas*, 49 F.3d at 261.

Petitioner was sentenced as a third habitual offender to 20-60 years imprisonment on the possession with intent to deliver 225-650 grams of cocaine conviction, one to eight years imprisonment on the possession of less than 25 grams of

---

[1]The court notes that the United States Supreme Court has granted certiorari in *Oregon v. Ice*, _ S. Ct. _, 2008 WL 112170 (March 17, 2008), on the question of whether the Sixth Amendment, as construed in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), requires that facts (other than prior convictions) necessary to imposing consecutive sentences be found by the jury or admitted by the defendant.

cocaine conviction, one to 10 years imprisonment on the felon in possession conviction, and concurrent terms of two years imprisonment on the felony firearm convictions, to be served consecutively to the other sentences. Petitioner's sentences do not exceed the statutory maximum for each offense. *See* Mich. Comp. Laws §§ 333.7401(2)(a)(ii); 333.7403(2)(a)(v); 750.227b; 750.224f; 769.11(1)(a). The state court thus acted within its discretion in imposing Petitioner's sentences and there is no extreme disparity between his crimes and sentences so as to offend the Eighth Amendment. Habeas relief is not warranted on this claim.

## V. CONCLUSION

For the reasons stated above, the court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is DENIED.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2008


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 30, 2008, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522


S:\Cleland\JUDGE'S DESK\C3 ORDERS\07-10129.DAVIS.ctb.wpd